| | |
|---|---|
| Rogovsky Enterprise, Inc., | Case No. 14-cv-188 (SRN/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MasterBrand Cabinets, Inc., | |
| Defendant. | |

John D. Holland and J. Michael Dady, Dady & Gardner, PA, 80 South Eighth Street, Suite 1500, Minneapolis, Minnesota 55402, for Plaintiff.

Erin K. Westbrook, Barnes & Thornburg, LLP, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402; Mark P. Miller, Barnes & Thornburg, LLP, One North Wacker Drive, Suite 4400, Chicago, IL 60606, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.     INTRODUCTION

This matter is before the Court on (1) Plaintiff's Motion for an Entry of Default [Doc. No. 32]; (2) Defendant's Motion to Transfer Venue [Doc. No. 12]; and (3) Defendant's Motion to Stay Proceedings [Doc. No. 20].  For the reasons set forth below, Plaintiff's motion is denied, Defendant's Motion to Transfer is granted, and Defendant's Motion to Stay is denied as moot.

## II.     BACKGROUND

Plaintiff Rogovsky Enterprise, Inc. ("Plaintiff" or "Rogovsky") filed suit against Defendant MasterBrand Cabinets, Inc. ("Defendant" or "MasterBrand") on January 17,

2014.  (See generally Compl. [Doc. No. 1].)  MasterBrand is a "leading manufacturer of cabinets in the United States," and is a Delaware corporation, with a principal place of business in Indiana.  (Id. ¶¶ 1, 21.)  Rogovsky is a "franchisor of kitchen and bath design and home remodeling businesses called Kitchen & Home Interiors," and is a Florida corporation, with a principal place of business also in Florida.  (Id. ¶¶ 18, 36.)

Plaintiff alleges that in late 2011, Rogovsky and MasterBrand executed a written Exclusive Distribution Agreement [hereinafter, "Agreement" or "the contract"].  (Id. ¶ 6; see Compl., Ex. A, "Agreement" [Doc. No. 4-1])  The Agreement allegedly encapsulated MasterBrand's intent that Plaintiff's franchisee purchasers would exclusively sell MasterBrand cabinetry sourced, not through one of MasterBrand's authorized dealers, but, instead through Plaintiff and MasterBrand.  (Id. ¶ 5.)  Plaintiff further alleges that the "Agreement granted Plaintiff the right to act as the putative 'franchisor' for the sale of MasterBrand cabinets in all 50 states."  (Id. ¶ 7.)  Defendant, however, contends that the Agreement did not grant Plaintiff franchisor status.  (See Def.'s Mem. at 13 [Doc. No. 14].)  Rather, MasterBrand argues that by authorizing Rogovsky's franchisees to use MasterBrand cabinets, "MasterBrand was nothing more than [the sole cabinet] product supplier to Rogovsky's franchisees."  (See id.)  Or, in other words, Rogovsky agreed that its franchisees would sell only MasterBrand cabinets to its end user customers.  (See Compl. ¶ 39 [Doc. No. 1].)  In exchange for MasterBrand serving as the sole product supplier for Rogovsky, the Agreement provided that Rogovsky would "receive rebates from [MasterBrand]."  (See Agreement § 3(e) [Doc. No. 4-1].)

The Agreement was contracted to last for a term of seven years.  (See id. § 4(a).)

One term of the contract provided that Rogovsky would "use its best efforts and all due diligence to achieve the maximum distribution, display and sale of the Products for its own accounts and through sales of Franchises." (See id. § 2(a).) Rogovsky was also obligated, under the terms of the Agreement, to "maintain its Florida showroom for training, including having qualified trainers on staff, all Products current and on display in the showroom, and ample facilities to host trainings." (See id. § 2(k).) Additionally, pursuant to paragraph 2(b) of the Agreement, Rogovsky committed to not "directly or indirectly distribute, sell or handle in the Territory any products which in [MasterBrand's] reasonable judgment would be in direct competition with [MasterBrand's] Products." (See id. § 2(b).)

The Agreement also provided a choice of law and a choice of forum clause. According to paragraph 5(c), "[t]he Agreement [was] governed by and [was] made under the laws of the State of Indiana." (See id. § 5(c).) According to paragraph 5(d), "[t]he parties agree[d] that any litigation arising out of this Agreement or the termination thereof shall be heard in a court located in the State of Indiana, and each party consents to jurisdiction over it by such a court." (See id. § 5(d).) In addition to the Agreement between MasterBrand and Rogovsky, Rogovsky also used a Franchise Disclosure Document with its Kitchen & Home Interiors franchisees to summarize certain provisions of its franchise agreement with the franchisees. (See Miller Decl., Ex. 3 [Doc. No. 16].) In Item 8 of that document, Rogovsky instructed its franchisees to purchase all cabinets sold to their customers from "the required supplier," MasterBrand. (See id. at Item 8.)

Plaintiff alleges that it started to sell franchises in the State of Florida in 2012. (Id.

¶ 8.)  By 2012, however, MasterBrand allegedly began to receive "negative feedback from its pre-existing network of dealers with whom Plaintiff's franchisees could successfully compete."  (Id. ¶ 9.)  Furthermore, Defendant argues that because of Rogovsky's *de minimis* sales of MasterBrand cabinets, MasterBrand concluded that Rogovsky was not using its "best efforts" under the Agreement.  (See Def.'s Mem. at 4 [Doc. No. 14].)  As a result, on October 17, 2013, Defendant terminated Plaintiff's right to sell additional franchises, effective December 31, 2013.  (Id. ¶¶ 13, 52.)  Pursuant to the Agreement, Defendant had a right to terminate the contract if it had "good cause."  (Id. ¶ 48; see Agreement § 4(a) [Doc. No. 4-1].)  However, Plaintiff contends that MasterBrand did not have a good cause basis to terminate the Agreement because none of the requisite conditions described in § 4(a) of the Agreement had occurred.  (See Compl. ¶ 49 [Doc. No. 1].)

As a result of Defendant's termination of the Agreement, Plaintiff brought suit, asserting thirteen distinct claims against Defendant.  (Id. ¶¶ 65–314.)  Rogovsky's claims against MasterBrand include: breach of contract; tortious interference with contractual relations; violations of the Minnesota Franchise Act, the California Franchise Relations Act, the Connecticut Franchise Act, the Hawaii Franchise Investment Act, the Illinois Franchise Disclosure Act of 1987, the Indiana Franchise Act and Deceptive Franchise Practices Act, the Michigan Franchise Investment Law, the Mississippi Code, the Washington Franchise Investment Protection Act; unjust enrichment; and equitable estoppel.  (See id.)  Plaintiff alleges that it not only expended hundreds of thousands of dollars in order to perform its obligations under the Agreement, but MasterBrand has also

deprived Rogovsky of its contractual right to make sales of this franchise concept across the United States. (Id. ¶¶ 56, 57.) All of Plaintiff's claims against MasterBrand arise from the Agreement and/or its termination.

On June 20, 2014, the magistrate judge ordered that "on or before July 31, 2014 . . . [i]f no settlement is reached, [MasterBrand] shall file its answer or other response to the Complaint." (06/20/14 Magistrate Judge Order [Doc. No. 9].) The parties engaged in a full-day mediation on June 24, 2014. (See Def.'s Mem. at 3 [Doc. No. 40].) While Defendant did not file an answer or Rule 12(b) motion, it did file two other motions on July 31, 2014. First, MasterBrand filed a Motion to Transfer Venue [Doc. No. 12], with a supporting memorandum [Doc. No. 14], and two supporting declarations [Docs. No. 15, 16]. Plaintiff filed a response brief on August 21, 2014 [Doc. No. 37], and MasterBrand filed a reply on September 4, 2014 [Doc. No. 38]. MasterBrand's second motion was a Motion to Stay Proceedings Pending the Outcome of its Motion to Transfer Venue [Doc. No. 21]. Defendant filed this motion with a supporting memorandum [Doc. No. 22], and Rogovsky filed a response brief on August 7, 2014 [Doc. No. 30]. Finally, Plaintiff filed a Motion for an Entry of Default on August 19, 2014 [Doc. No. 32], with a supporting memorandum [Doc. No. 33]. Defendant submitted a response brief on September 9, 2014 [Doc. No. 40], and Plaintiff filed a reply on September 24, 2014 [Doc. No.44]. The Court heard oral argument on all three motions on December 4, 2014. (See Minute Entry [Doc. No. 46].)

## III.  DISCUSSION

### A.  Motion for an Entry of Default

In Plaintiff's Motion for an Entry of Default, Rogovsky argues that because Defendant failed to file either an answer, or one or more of the motions discussed in Federal Rule of Procedure 12(b), Plaintiff is entitled to a default judgment.  (See Pl.'s Mem. at 1 [Doc. No. 33].)  In the magistrate judge's June 20, 2014 order, the magistrate judge stated that "on or before July 31, 2014 . . . [i]f no settlement is reached, [MasterBrand] shall file its answer or other response to the Complaint."  (06/20/14 Magistrate Judge Order [Doc. No. 9].)

Although MasterBrand filed a Motion to Transfer Venue and a Motion to Stay Proceedings, MasterBrand did not file a 12(b) motion or an answer.  Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  See Fed. R. Civ. P 55(a).  In turn, Rule 55(b) allows a court to enter judgment of default upon a party's request.  See Fed. R. Civ. P. 55(b).  Accordingly, Plaintiff contends that it is entitled to an entry of default, pursuant to Rule 55.  (See Pl.'s Mem. at 5 [Doc. No. 33]). The Court disagrees.

Entry of default judgment is at the discretion of the Court.  See Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996).  "The entry of default judgment is not favored by the law, and should be a rare judicial act."  Jones Truck Lines, Inc. v. Fosters Truck & Equip. Sales, Inc., 63 F.3d 685, 688 (8th Cir. 1995)

(internal quotations and citations omitted). "When determining whether a Default

Judgment is appropriate, the Court must consider whether the allegedly defaulting party

has filed a responsive Answer, or other pleading." Patil v. Minnesota State University,

Mankato, No. 12-cv-1052 (JRT/JSM), 2012 WL 7807608, at *12 (D. Minn. Dec. 10,

2012) (internal quotations and citations omitted).

Moreover, "'[w]here a defendant appears and indicates a desire to contest an

action, a court may exercise its discretion to refuse to enter default, in accordance with

the policy of allowing cases to be tried on the merits.'" Wendt v. Pratt, 154 F.R.D. 229,

230 (D. Minn. 1994) (quoting Lee v. Brotherhood of Maintenance of Way Employees,

139 F.R.D. 376, 381 (D. Minn. 1991)); see also 10 Charles A. Wright, Arthur R. Miller &

Mary K. Kane, Federal Practice and Procedure § 2682, at 411 (2d ed. 1983). The entry of

a default judgment "is only appropriate when there has been a clear record of delay or

contumacious conduct." Gold's Gym Licensing, LLC v. K-Pro Mktg. Grp., Inc., No. 09-

cv-1211 (PJS/RLE), 2010 WL 391310, at *2 (D. Minn. Jan. 26, 2010) (citing United

States on Behalf of and for the Use of Time Equip. Rental & Sales, Inc. v. Harre, 983

F.2d 128, 130 (8th Cir. 1993), and Taylor v. City of Ballwin, Missouri, 859 F.2d 1330,

1332 (8th Cir. 1988)).

Applying the standard set forth above, the Court finds that default judgment is

inappropriate in this case. By participating in a full-day mediation, and filing two

motions before this Court, Defendant "appears and indicates a desire to contest [this]

action." Wendt, 154 F.R.D. at 230; Lee, 139 F.R.D. at 381. In contrast, MasterBrand

does not have a "clear record of delay or contumacious conduct." Gold's Gym, 2010 WL

391310, at *2.  Therefore, the Court exercises its discretion to refuse to enter default, "in accordance with the policy of allowing cases to be tried on the merits."  Wendt, 154 F.R.D. at 230; Lee, 139 F.R.D. at 381.  Accordingly, Plaintiff's Motion for an Entry of Default is denied.

### B.  Motion to Transfer Venue

The Court proceeds by discussing the relevant standard of review for Defendant's Motion to Transfer Venue.[1]  Defendant moves to transfer venue to the U.S. District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).  (Def.'s Mem. at 1 [Doc. No. 14].)  According to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  See 28 U.S.C. § 1404(a).  "Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)."  Atl. Marine Const. Co., Inc. v. U.S. District Court for the Western District of Texas, et al., 134 S. Ct. 568, 579 (2013)..

The pertinent § 1404(a) analysis requires the Court to engage in a three-step inquiry.  First, the Court must determine whether the District Court of Minnesota is a

---

[1]    Insofar as Plaintiff contends that the Court should not consider the merits of Defendant's Motion to Transfer, the Court disagrees.  Plaintiff argues that the Court should not consider Defendant's Motion to Transfer because by not filing a timely Rule 12 responsive pleading "Defendant must be deemed to have waived any objection to venue."  (See Pl.'s Mem. at 1 n.1 [Doc. No. 37].)  However, as noted above, the Court does not view Defendant's actions as waiving a position or defaulting in any way.  As the Court explained above, MasterBrand "appears and indicates a desire to contest [this] action," Wendt, 154 F.R.D. at 230; therefore, the Court proceeds by considering the merits of Defendant's Motion to Transfer.

proper venue, without regard to the forum-selection clause. This is because "[s]ection 1404(a) applies only if the initial federal forum is a proper venue," pursuant to 28 U.S.C. § 1391. See Alan Wright, et al. 14D Fed. Prac. & Proc. Juris. § 3829 (4th ed.). Second, the Court must determine the validity of the forum-selection clause. If the clause is valid, then third and finally, the Court must weigh a series of factors to determine the enforceability of the clause.

Other courts analyzing the validity and enforceability of forum-selection clauses have not always clearly distinguished these two inquiries. Rather, these courts have merged the analyses required. See, e.g., Frango Grille USA, Inc. v. Pepe's Franchising Ltd., et al., No. 14-cv-2086 (DSF), at 4 (C.D. Cal. July 21, 2014) (merging the analyses required for steps two and three, and holding that "if enforcement of the clause would contravene a strong public policy of California, [then] the clause is invalid . . ." Plaintiff similarly confuses the validity inquiry with the enforceability inquiry in its own brief. (See Pl.'s Mem. at 9 (explaining that courts must determine whether a forum-selection clause is valid, but citing to cases that analyze the enforceability of the forum-selection clause, rather than the validity of the clause) [Doc. No. 37].)

To avoid merger of the validity and enforceability analyses and the confusion that would likely follow, the Court addresses the validity, and the enforceability of the clause, individually. See Union Elec. Co. v. Energy Ins. Mut. Ltd., No. 4:10-cv-1153(CEJ), 2014 WL 4450467, at *4 (E.D. Mo. Sept. 10, 2014) (finding that "the validity of a forum-selection clause 'must first be determined under general contract law,'" before the enforceability of the clause is determined).

## 1. District of Minnesota is a Proper Venue

As noted above, the Court begins by determining whether the District Court of Minnesota is a proper venue, without regard to the forum-selection clause. See Alan Wright, et al. 14D Fed. Prac. & Proc. Juris. § 3829 (4th ed.). Section 1391 states that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). It further provides that:

> A civil action may be brought in – (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Id. § 1391(b). Therefore, if Plaintiff demonstrates that at least one of the three conditions above is satisfied, then the initial federal forum is considered proper.

Plaintiff alleges that venue is proper pursuant to 28 U.S.C. § 1391, "because a substantial part of the events giving rise to the dispute occurred in the State of Minnesota." (Compl. ¶ 25 [Doc. No. 1].) Rogovsky claims that "MasterBrand Director of National Accounts Steve Matlon 'offered' Plaintiff the franchise from a MasterBrand business address of 10700 Alison Way, Minneapolis, Minnesota 55077." (Id. ¶ 117.) Accordingly, the Court finds that venue is proper, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to Plaintiff's contractual claims occurred in Minnesota. Specifically, since the basis of the parties' dispute arises from provisions in, and

interpretation of, the contract, and the contractual offer occurred in Minnesota, then a substantial part of the events "giving rise" to the contract, as well as the subsequent contractual claims, occurred in Minnesota. See 28 U.S.C. § 1391(b)(2).

Defendant does not directly address whether this Court is a proper venue, pursuant to 28 U.S.C. § 1391, as the § 1404(a) analysis requires. However, the Court assumes that because MasterBrand is requesting the Court to engage in a § 1404(a) analysis, then MasterBrand does not take issue with the Court's finding that the District of Minnesota is a proper venue for this case.[2]

## 2. Validity of Forum-Selection Clause

The Court now addresses the validity of the parties' forum-selection clause, pursuant to § 1404(a). According to the United States Supreme Court, a forum-selection clause is valid if it is "a freely negotiated private . . . agreement, unaffected by fraud, undue influence, or overweening bargaining power." See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). In contrast, a forum-selection clause is invalid if either party engaged in "fraud or overreaching." See id. at 15 (stating that the forum-selection clause at issue would be invalid if the defendant could clearly show the plaintiff's fraud or overreaching); see also Guest Assocs., Inc. v. Cyclone Aviation Prods., Ltd., 30 F.

---

[2]     If Defendant did believe that the original federal forum was an improper venue, then MasterBrand would have to file a Motion to Transfer this case pursuant to 28 U.S.C. § 1406(a). See 28 U.S.C. § 1406(a) (stating that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); see also Alan Wright, et al. 14D Fed. Prac. & Proc. Juris. § 3829 (4th ed.) (explaining that "[s]ection 1404(a) . . . is contrasted with § 1406(a), which permits transfer in cases in which the original federal forum is an improper venue.").

Supp. 3d 1278, 1281 (N.D. Ala. 2014) (stating that "[t]he validity of a forum-selection clause is determined under the usual rules governing the enforcement of contracts in general"); P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (validity of forum-selection clause is determined under the usual rules governing the enforcement of contracts, including whether the clause was freely and fairly negotiated, and whether there was any fraud, duress, misrepresentation, or other misconduct) (citation omitted).

The party opposing the Motion to Transfer has the burden of "clearly show[ing]" the invalidity of the clause. See Bremen, 407 U.S. at 15; see also Atl. Marine, 134 S. Ct. at 581 (2013) (explaining that the party defying the forum-selection clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

Here, Plaintiff does not clearly show that the forum-selection clause is invalid. Rogovsky does not allege that the Agreement was affected by fraud, undue influence, or overreaching. See id. at 12, 15. Nor does Rogovsky contend that the Agreement was not freely negotiated. See id. at 12. In fact, to the contrary, Plaintiff alleges that representatives from both companies actively participated in drafting the Agreement. (See Compl. ¶¶ 28–30 [Doc. No. 1].) For instance, Rogovsky alleges that "Matlon[, MasterBrand's Director of National Accounts,] invited [Yair Argov, Rogovsky's owner,] to review a draft of the Agreement," and after discussion, the two parties agreed that the "Agreement would not contain quota requirements (e.g., identifying the number of franchises that Plaintiff would be required to sell  in order to continue to operate under

the Agreement)." (Id. ¶¶ 28–29.)  These factual allegations indicate that the parties had a fair, arm's length negotiation when drafting and executing the contract.  Cf. Union Elec. Co., 2014 WL 4450467, at *4 (finding that the forum-selection clause at issue was valid because the contract was "freely entered into between two large commercial entities operating at arm's length").  Therefore, the Court finds that the forum-selection clause in the Agreement is valid.

### 3. Enforceability of Forum-Selection Clause

Given the validity of the forum-selection clause in this case, the Court moves to the third and final step of the § 1404(a) inquiry to determine the enforceability of the clause.  The Court's analysis is guided by the Supreme Court's holding in Atlantic Marine, which set forth a test for analyzing the enforceability of a forum-selection clause on a § 1404(a) motion to transfer.  See 134 S. Ct. at 581.  In Atlantic Marine, the Supreme Court explained that a court's § 1404(a) analysis changes when it involves a valid forum-selection clause.  See id.  The Supreme Court noted that a "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations."  Id.  Private factors include the "plaintiffs' choice of forum," and generally relate to the "practical problems that make trial of a case easy, expeditious and inexpensive."  Id. at 581 n.6 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981)).  In contrast, "[p]ublic-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a

diversity case in a forum that is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6.

However, when a court's § 1404(a) analysis involves a valid forum-selection clause, as it does here, the usual § 1404(a) analysis changes in three ways. "First, the plaintiff's choice of forum merits no weight." Id. at 581. Second, a court "should not consider arguments about the parties' private interests." Id. at 582. And third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules – a factor that in some circumstances may affect public-interest considerations." Id. (citing Piper Aircraft Co., 454 U.S. at 241, n.6). Accordingly, the Court "may consider arguments about public-interest factors only" to determine whether the parties' forum-selection clause is enforceable. See Atl. Marine, 134 S. Ct. at 582.

Here, Defendant argues that the forum-selection clause in the Agreement is not only valid, but is also enforceable because "Rogovsky cannot establish that enforcement of the parties' forum-selection provision is unwarranted because of any public-interest factors." (See Def.'s Mem. at 10 [Doc. No. 14].) MasterBrand claims that "[n]one of the traditional public-interest factors overcome the forum-selection clause here." (See id.) Specifically, Defendant contends that "[t]here is no extraordinary court congestion in the Southern District of Indiana;" "[t]here is no 'local' interest in having this case decided in Minnesota;" and finally, since "the public local interests are to try a diversity case 'in a forum that is at home with the law,'" then "trying the case in Indiana would be 'at home' with the substantive, governing Indiana law." (See id. at 10–11) (citing Atl. Marine, 134

14

S. Ct. at 581 n.6).

Rogovsky only appears to disagree with Masterbrand's contention that there is no local interest in having this case decided in Minnesota. Specifically, Rogovsky argues that Minnesota public policy dictates that a party "cannot waive its right to litigate its claims for violation of the Minnesota Franchise Act in a forum located within the State of Minnesota." (See Compl. ¶ 119 (citing Minn. R. 2860.4400(J)) [Doc. No. 1].) According to Minn. R. 2860.4400, "[i]t shall be unfair and inequitable" for a "franchise contract[] or agreement[]" to:

> . . . require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, *forum*, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes; provided that this part shall not bar an exclusive arbitration clause.

See Minn. R. 2860.4400(J) (emphasis added).

Insofar as Defendant argues that the Court need only consider federal, as opposed to the State of Minnesota's, public policy when determining the enforceability of a forum-selection clause, the Court disagrees. (See Def.'s Mem. at 12 [Doc. No. 14].) Atlantic Marine states that public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Atl. Marine, 134 S. Ct. at 581 n.6 (internal quotation and citation omitted). These factors are not "exclusively under federal law." (Cf. Def.'s Mem. at 12 [Doc. No. 14].) For instance, a federal district court may have a local interest in deciding cases that involve state law from its district.

In fact, Defendant cites to a number of cases in which federal courts considered state law as part of their public-interest analyses. (See Def.'s Reply at 7 (citing Saladworks, LLC v. Sottosanto Salads, LLC, No. 13-cv-3764, 2014 WL 2862241, at *7 (E.D. Pa. June 24, 2014) (considering California's public policy in deciding a controversy involving a California franchisee operating a franchise in California with an out of state franchisor, but holding that "Pennsylvania has an equal interest in deciding an agreement that was entered into by an entity that has its principal place of business in Pennsylvania."); Allegra Holdings, LLC v. Davis, No. 13-CV-13498, 2014 WL 1652221, at *4 (E.D. Mich. Apr. 24, 2014) (analyzing Minnesota's public policy preference as articulated in Minn. R. 2960.4400(J), and holding that "nothing in the choice of forum provision in any way diminishes [the] [d]efendants' right to avail themselves of Minnesota laws[, since a] choice of forum is *not* tantamount to a choice of law.") [Doc. No. 38].) Therefore, the public-interest factors that the Court must consider properly include Minnesota's public policy preferences.

In order to determine whether the Court should consider Minnesota's public policy, particularly as articulated in Minn. R. 2860.4400(J), the Court must first determine whether the parties' Agreement qualifies as a franchise contract or an area franchise contract. Plaintiff claims that the Agreement is a "franchise contract" and pursuant to the contract, Rogovsky qualifies as a "franchisee," or a "subfranchisor" that has an "area franchise." (See Pl.'s Mem. at 5–7 [Doc. No. 37].) The Minnesota Franchise Act defines a "franchisee" as a "person to whom a franchise is granted." See Minn. Stat. § 80C.01, subd. 5. A "subfranchisor," in contrast, is "a person to whom an

16

area franchise is granted." See id. subd. 8. Plaintiff alleges that the Agreement granted "Plaintiff the right to act as the putative 'franchisor' [or subfranchisor] for the sale of MasterBrand cabinetry in all 50 states." (See Compl. ¶ 7 [Doc. No. 1].)

In opposition, Defendant contends that the Agreement "does not even remotely resemble a franchise agreement." (See Def.'s Reply at 9 [Doc. No. 38].) The Court agrees with Defendant that the Agreement does not constitute a franchise contract or an area franchise contract. The Court's reasoning is set forth below.

### a. Rogovsky is Not a Franchisee Pursuant to a Franchise Contract

Under the Minnesota Franchise Act ("MFA"), a franchise contract is defined as:

> a contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between two or more persons: (i) by which a franchisee is granted the right to engage in the business of offering or distributing goods or services using the franchisor's trade name, trademark, service mark, logotype, advertising, or other commercial symbol or related characteristics; (ii) in which the franchisor and franchisee have a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise; and (iii) for which the franchisee pays, directly or indirectly, a franchise fee . . .

Minn. Stat. § 80C.01, subd. 4. Thus, in order for the parties' Agreement to qualify as a franchise contract, the Agreement must satisfy the three elements outlined in the Act. The MFA further defines the third requisite element, the "franchise fee," as:

> any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any

17

training fees or training school fees or charges; provided, however, that the following shall not be considered the payment of a franchise fee: . . . (e) the purchase, at their fair market value, of supplies or fixtures or agreement to so purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement . . .

See id. subd. 9. The Court finds that because Plaintiff cannot establish that it paid a "franchise fee" as part of this Agreement, the Agreement does not constitute a franchise contract.

Although Rogovsky does not expressly argue that it paid a "franchise fee," it appears to contend that (1) the "$300,000 worth of improvements [it paid] to establish a new showroom and training facility, as required by MasterBrand under Paragraph 2(k) of the Agreement," and (2) Plaintiff's "discontinued sales of cabinetry manufactured by competing manufacturers as required by Paragraph 2(b) of the Agreement," collectively constitute the franchise fee. (See Pl.'s Mem. at 7 [Doc. No. 37].) In reply, Defendant argues that "the Distribution Agreement did not call for Rogovsky to pay MasterBrand any kind of franchise fee or other consideration." (See Def.'s Reply at 12 [Doc. No. 38].) The Court agrees with MasterBrand.

First, the Agreement does not clearly require Plaintiff to pay $300,000 to remodel its Deerfield Beach, Florida dealership showroom. (See Agreement § 2(k) [Doc. No. 4-1].) Rather, the contractual provision states that Rogovsky "shall also maintain its Florida showroom for training, including having qualified trainers on staff, all Products current and on display in the showroom, and ample facilities to host training." (See id.) Thus, based on the plain language of the

18

contract, Rogovsky is not required to pay a fee in order to enter into the contract with MasterBrand.

Moreover, even if the Court interprets this provision of the Agreement as requiring Rogovsky to expend a certain value in order to ensure that the showroom is "maintain[ed]," the Agreement explicitly states that Rogovsky "acknowledges and agrees that all of the costs and expenses incurred in performance of this Agreement are for its own account and shall not for any purpose be construed as *franchise*, entitlement, licensing, or similar fees." (See id. § 4(c)) (emphasis added). Additionally, the MFA expressly states that "the purchase, at their fair market value, of supplies or fixtures or agreement to so purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement" does not constitute a franchise fee. See Minn. Stat. § 80C.01, subd. 9. Therefore, by the terms of the Agreement and the MFA, the $300,000 Rogovsky expended on the showroom does not constitute a franchise fee.

Second, Rogovsky's discontinued sale of cabinetry manufactured by competing manufacturers also does not constitute a franchise fee. Pursuant to the MFA's definition of "franchise fee," only charges or payments of certain kinds qualify as franchise fees. See id. Therefore, Plaintiff's contractual promise to not sell products that compete with MasterBrand's products does not constitute a "fee" or "charge" of any kind, as it is not a "payment either in lump sum or by installments." See id. Therefore, the Court finds that neither the $300,000

expended by Rogovsky to improve its showroom, nor its promise to not sell

products that compete with MasterBrand's products, constitutes a franchise fee.

Accordingly, even assuming that Plaintiff could demonstrate the existence of the

first two elements of a franchise contract, as required under Minn. Stat. § 80C.01,

subd. 4, Plaintiff failed to demonstrate the existence of the third requisite element

– the franchise fee.  Thus, the parties' Agreement is not a franchise contract and

Plaintiff failed to sufficiently allege that it was a franchisee.

### b. Rovosky is Not a Subfranchisor and Does Not Have an Area Franchise Pursuant to a Franchise Contract

In addition to alleging that it was a franchisee, Rogovsky also claims that it

was a subfranchisor or had an area franchise pursuant to the Agreement.  As noted

above, according to the MFA, a "subfranchisor" is "a person to whom an area

franchise is granted."  See Minn. Stat. § 80C.01, subd. 8.  While a franchise

contract must meet the three criteria established in Part III(B)(3)(a), an area

franchise contract is any:

> contract or agreement between a franchisor and a subfranchisor whereby [1] the subfranchisor is granted the right, for consideration given in whole or in part for such right, [2] to sell or negotiate the sale of franchises in the name or in behalf of the franchisor.

See id. subd. 7.  Defendant contends that Plaintiff fails to establish both elements

required to demonstrate that the Agreement is an area franchise contract.

Specifically, MasterBrand argues that that Rogovsky does not establish that (1)

Rogovsky, the alleged subfranchisor, gave MasterBrand consideration, to (2) sell

or negotiate the sale of franchises in the name of, or in behalf of, MasterBrand. (See Def.'s Reply at 11–13 [Doc. No. 38].) The Court finds that even assuming that Rogovsky gave MasterBrand consideration to enter into the Agreement, Rogovksy did not sell or negotiate the sale of franchises in the name of, or in behalf of, MasterBrand.

According to the Agreement, the Franchise Disclosure Document ("FDD"), and Rogovsky's representations on its website, Plaintiff did not sell franchises in the name of MasterBrand. The Agreement states that "Distributor [Rogovsky] is the franchisor of kitchen and bath design and home remodeling businesses called Kitchen & Home Interiors (the 'Franchises')." (See Agreement § 1(b) [Doc. No. 4-1].) Similarly, the FDD, the document Rogovsky used to sell its franchises, states that Rogovsky "conduct[s] business under the name, Kitchen & Home Interiors." (See Miller Decl., Ex. 3 [Doc. No. 16].) Finally, Rogovsky even represented on its website that it was selling franchises named "Kitchen & Home Interiors." (See Miller Decl., Ex. 5 [Doc. No. 39-1].)

Not only was Rogovsky not selling franchises in the name of MasterBrand, but it also was not selling franchises "in behalf of [MasterBrand]." See Minn. Stat. § 80C.01, subd. 7. As Defendant notes, in the FDD, "the [allegedly] single legal document describing the franchise to prospective franchisees," "Rogovsky *does not even mention MasterBrand*, let alone describe the franchise as a MasterBrand cabinet franchise." (See Def.'s Reply at 14 (emphasis original) [Doc. No. 38].) In fact, in Item 8 of the FDD, Plaintiff refuses to name

MasterBrand as the supplier of cabinets, and instead directs franchisees to reference the Confidential Operating Manual to determine the name of the sole cabinet supplier.  (See Miller Decl., Ex. 3 at Item 8 [Doc. No. 16].)

Moreover, the Kitchen & Home Interiors franchises offer and sell more products than simply the cabinetry that MasterBrand provides.  (See Miller Decl., Ex. 4 [Doc. No. 39-1].)  In fact, according to the United States Patent and Trademark Office website, Kitchen & Home Interiors offer comprehensive "kitchen and bath design and home remodeling."  (See id.)  The fact that the franchises sell more products than simply the MasterBrand cabinetry further demonstrates that the franchises were sold in behalf of Rogovsky and/or Kitchen & Home Interiors, and not MasterBrand.[3]

The Court finds that, as Defendant contends, the Agreement is not a franchise or an area franchise agreement between the parties, but rather an agreement that identifies MasterBrand as the sole supplier of cabinets for Rogovsky's Kitchen & Home Interiors-branded franchises.  In fact, according to paragraph 5(b) of the Agreement, "[n]othing in this Agreement shall make the parties affiliates, licensees or parties to a joint venture, community of interest or *franchise relationship*, and any attempt to characterize the relationship in such terms is expressly agreed to be inapplicable and mutually disclaimed by the

---

[3]  Additionally, the Court notes that the Agreement did not limit MasterBrand from selling its cabinets to other companies or entities.  Accordingly, MasterBrand did not rely on Rogovsky as its sole outlet for selling cabinets.  Therefore, pursuant to the contract, not only did Rogovsky not sell franchises in behalf of MasterBrand, but Rogovsky's franchises were also not MasterBrand's exclusive means of selling its cabinetry.

parties." (See Agreement § 5(b) [Doc. No. 4-1].) Therefore, the Agreement contains an express contractual provision bolstering the Court's interpretation that this Agreement does not constitute a franchise contract of any sort.

Defendant contends that another reason why the parties' Agreement is not a franchise contract is because Rogovsky fails to adhere to "[f]ederal and state franchise laws [that] *require* Rogovsky to disclose in Item 8 of its FDD any suppliers from whom the franchisees must buy supplies." (See Def.'s Reply at 14 (emphasis original) (citing 16 C.F.R. § 436.5; Minn. Stat. § 80C.04) [Doc. No. 38].) According to 16 C.F.R. § 436.5, in Item 8 of its FDD, Rogovsky must "[d]isclose the franchisee's obligations to purchase or lease goods, services, supplies, fixtures, equipment, inventory . . . or comparable items related to establishing or operating the franchised business." See 16 C.F.R. § 436.5(h). Similarly, pursuant to Minnesota state law, the FDD must address whether "the franchisee or subfranchisor is required to purchase from the franchisor or person designated by the franchisor, services, supplies, products, fixtures or other goods relating to the establishment or operation of the franchise business, together with a description thereof." See Minn. Stat. § 80C.04(l).

Accordingly, in Item 8 of Plaintiff's FDD, it states that franchisees "must purchase all cabinets sold to [their] customers from the required supplier designated by [Rogovsky]." (See Miller Decl., Ex. 3 at Item 8 [Doc. No. 16].) Item 8 further states that Rogovsky "will inform [franchisees] of the names of all approved and required suppliers in the Confidential Operating Manual." (See id.)

Therefore, although Item 8 does not name MasterBrand, it appears that Plaintiff's FDD meets the relevant criteria required by federal and state law because it discloses the franchisees' obligation to purchase cabinets from the "required supplier." Thus, Defendant incorrectly argues that Item 8 of Plaintiff's FDD fails to contain the requisite information.

However, even assuming that under federal and/or state law, Plaintiff was required to name MasterBrand in Item 8, as opposed to within the Confidential Operating Manual, the Court finds that Plaintiff's failure to do so would not negate the existence of the alleged franchise contract, if one in fact existed. Rather, Plaintiff's failure to include this detail would simply mean that the franchise contract was deficient in some way. Therefore, the Court does not base its finding that the Agreement is not a franchise contract on the content of Item 8.

Defendant raises three additional arguments in support of its claim that public-interest factors do not counsel the Court to overrule the forum-selection clause. First, Defendant claims that Minnesota's administrative forum-selection restriction rule does not apply to Rogovsky because Rogovsky has no connection to Minnesota. (See Def.'s Reply at 15 [Doc. No. 38].) Because the Court already held that it need not consider the public policy considerations articulated in Minn. R. 2860.4400(J) because the parties' underlying Agreement was not a franchise contract, the Court need not determine the extent of Rogovsky's connections to Minnesota at this stage of the proceedings. Second, Defendant argues that Minn. R. 2860.4400(J) does not evince a strong state public policy against enforcing

forum-selection clauses.  (See Def.'s Reply at 19 [Doc. No. 38].)  And third, MasterBrand claims that Minnesota only has "a minimal interest in this particular dispute;" and therefore, the Court need not credit the state's policy preference. (See Def.'s Mem. at 15 [Doc. No. 14].)  However, as with Defendant's argument about Rogovsky's connections to Minnesota, at this stage of the proceedings, the Court need not determine the strength of Minnesota's public policy against enforcing forum-selection clauses, nor determine the degree of interest the state has in this particular dispute, as the Agreement at issue is not a franchise contract.

In sum, Plaintiff failed to meet its burden of "establishing that transfer to the forum for which the parties bargained is unwarranted."  See Atl. Marine, 134 S. Ct. at 581.  Plaintiff did not show that the parties' Agreement constitutes a franchise contract or an area franchise contract.  Accordingly, Plaintiff is neither a franchisee, nor a subfranchisor that has an area franchise, and the Court need not consider Minnesota's policy preference articulated in Minn. R. 2860.4400(J), as the rule does not apply to the Agreement in this case.  Therefore, no public-interest factors counsel the Court to overrule the parties' prior negotiated Agreement to litigate in Indiana; and the parties' forum-selection clause is enforceable.  "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'"  Atl. Marine, 134 S. Ct at 581 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).  As this case is not the "most exceptional," the Court grants Defendant's Motion to Transfer to the Southern District of Indiana.

25

### C. Motion to Stay

In addition to filing a Motion to Transfer, Defendant simultaneously filed a Motion to Stay Proceedings, pending the outcome of its Motion to Transfer. (See Def.'s Mot. to Stay [Doc. No. 20].) Because this Court granted Defendant's Motion to Transfer, its Motion to Stay is denied as moot. See, e.g., Paterson v. Wal-Mart Stores, Inc., No. 05-1049-CV-W-SOW, 2005 WL 3302367, at *2 (W.D. Mo. Dec. 5, 2005) (finding that because the court granted the defendant's motion to transfer, the defendant's motion to stay proceedings in the case pending transfer was dismissed as moot); Thompson v. Apple, Inc., No. 3:11-CV-03009-PKH, 2011 WL 2671312, at *4 (W.D. Ark. July 8, 2011) (explaining that because the court had remanded the case to state court, the defendant's motion to stay was denied as moot).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for an Entry of Default [Doc. No. 32] is **DENIED.**

2. Defendant's Motion to Transfer Venue [Doc. No. 12] is **GRANTED.**
   a. This action is transferred to the United States District Court for the Southern District of Indiana; and
   b. The Clerk of Court is directed to effect the transfer.

3. Defendant's Motion to Stay Proceedings [Doc. No. 20] is **DENIED as moot.**


Dated: February 23, 2015                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge