UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ROGOVSKY ENTERPRISE, INC., a Florida corporation, | ) ) ) | |
| Plaintiff, | ) ) | 3:15-cv-00022-RLY-WGH |
| vs. | ) ) | |
| MASTERBRAND CABINETS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

Defendant, Masterbrand Cabinets, Inc., moves to dismiss Counts II-XIII of Plaintiff's Complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is **GRANTED in part** and **DENIED in part**.

**I.     Background**

According to the Complaint, Masterbrand is the leading manufacturer of cabinets in the United States, and its principal place of business is in Jasper, Indiana. (Filing No. 1, Compl. ¶¶ 1, 21). Plaintiff, Rogovsky Enterprises, Inc., is a franchisor of kitchen and bath design and home remodeling businesses called Kitchen & Home Interiors ("KHI"), and is located in Deerfield Beach, Florida. (*Id*. ¶¶ 18, 36). Rogovsky's principals and owners are Yair Argov and Uri Garish. (*Id*. ¶ 19).

In December of 2011, Rogovsky and MasterBrand executed a written Exclusive Distribution Agreement, whereby KHI's future franchisees would exclusively sell

1

MasterBrand cabinetry sourced, not through one of MasterBrand's authorized dealers, but through Rogovsky and MasterBrand.  (*Id*. ¶¶ 5, 6; *see also* Compl., Ex. A, ("Agreement")).  In exchange for receiving a 15% rebate from MasterBrand on cabinets KHI's future franchisees purchased directly from MasterBrand, Rogovsky agreed to require that all of its future KHI franchisees purchase their cabinets exclusively from MasterBrand.  (Agreement, § 1(d) & § 3(g)).

The Agreement was contracted for a term of seven years, with an option for renewal.  (*Id*. § 4(a)).  Under Section 2 of the Agreement, Rogovsky committed to "use its best efforts and all due diligence to achieve the maximum distribution, display and sale of the Products for its own accounts and through sales of Franchises."  (*Id*. § 2(a)).  Rogovsky was also obligated to "actively and continuously pursue new KHI Franchisees" and to "maintain its Florida showroom for training, including having qualified trainers on staff, all [MasterBrand] Products current and on display in the showroom, and ample facilities for hosting."  (*Id*. § 2(k)).  In addition, Rogovsky promised not to "directly or indirectly distribute, sell or handle in the Territory any products which in [MasterBrand's] reasonable judgment would be in direct competition with [MasterBrand's] Products."  (*Id*. § 2(b)).  Rogovsky also had a Franchise Disclosure Document ("FDD[1]"), which it used in soliciting potential KHI franchisees.  (*See* Filing No. 55-2, Franchise Disclosure Document, Defendant's Ex. B).   Item 8 informs its future

---

[1] This document was not attached to Rogovsky's Complaint.  The court may consider this document as support for MasterBrand's motion to dismiss, however, since it is referenced in the Agreement, *see* Section 1(b), and is central to Rogovsky's claims.  *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

franchisees that the "only required supplier is for cabinets." (*Id*. at 8). Curiously, MasterBrand is not mentioned in the FDD.

Rogovsky alleges that in 2012, it began selling KHI franchises in the State of Florida. (Compl. ¶ 8). By 2012, however, MasterBrand began receiving negative feedback from its pre-existing network of dealers with whom Rogovsky's franchisees could successfully compete. (*Id*. ¶ 9). On October 17, 2013, MasterBrand terminated Rogovsky's right to sell additional franchises, effective December 31, 2013. (Compl., Ex. C). In the termination letter, MasterBrand explains:

> Because we were unable to get the sales we were projecting in the FL market, we stopped you from entering other markets and since then the FL market sales have dwindled down. As a result, we will terminate our agreement to partner with KHI moving forward and cease any rebate support effective December 31, 2013.

(*Id*.). Although the Agreement permitted MasterBrand to terminate the Agreement for "good cause," Rogovsky alleges MasterBrand did not have a good cause basis for its action because none of the conditions described in Section 4(a) of the Agreement had occurred. (*Id*. ¶ 49).

As a result of MasterBrand's termination of the Agreement, on January 17, 2014, Rogovsky filed a thirteen-count Complaint against MasterBrand in the United States District Court for the District of Minnesota. Its claims include: Count I, breach of contract; Count II, Tortious Interference with Contractual Relations and Prospective Business Advantage; Count III, violation of the Minnesota Franchise Act; Count IV, violation of the California Franchise Relations Act; Count V, violation of the Connecticut Franchise Act; Count VI, violation of the Hawaii Franchise Investment Act; Count VII,

3

violation of the Illinois Franchise Disclosure Act of 1987; Count VIII, violation of the
Indiana Franchise Act and Deceptive Franchise Practices Act; Count IX, violation of the
Michigan Franchise Investment Law[2]; Count X, violation of the Mississippi Code; Count
XI, violation of the Washington Franchise Investment Protection Act; Count XII, Unjust
Enrichment; and Count XIII, Equitable Estoppel.  (*Id*. ¶¶ 65-314).  Rogovsky alleges that
it not only expended hundreds of thousands of dollars in order to perform its obligations
under the Agreement, but MasterBrand also has deprived Rogovsky of its contractual
right to make sales of this franchise concept across the United States.  (*Id*. ¶¶ 56, 57).

On February 23, 2015, Judge Susan Nelson of the United States District Court for
the District of Minnesota enforced the parties' forum selection clause and granted
MasterBrand's Motion to Transfer this case to the Southern District of Indiana.  (*See*
Memorandum Opinion and Order ("Order"), Filing No. 47).  In her Order, Judge Nelson
considered Rogovsky's argument that Minnesota had a local interest in having the case
decided in Minnesota.  Because that argument was based upon a regulation promulgated
under Minnesota's Franchise Act, Minn. R. 2860.4400(J), that invalidated any waiver of
a franchisee's right to sue its franchisor in Minnesota, Judge Nelson had to first
determine whether the parties' Agreement qualifies as a franchise contract or an area
franchise contract.

Judge Nelson found that the Agreement did not constitute a franchise contract
because Rogovsky could not establish that it paid a "franchise fee" as part of the

---

[2] Rogovsky withdrew Count IX in his Response.  (Filing No. 65 at 6 n. 2).

Agreement.  (*Id*. at 18).   She also determined that Rogovsky is not a subcontractor and does not have an "area franchise" pursuant to a franchise contract.  (*Id*. at 20).  She concluded her analysis by stating:

> [T]he Agreement is not a franchise or an area franchise agreement between the parties, but rather an agreement that identifies MasterBrand as the sole supplier of cabinets for Rogovsky's Kitchen & Home Interiors-branded franchises.  In fact, according to paragraph 5(b) of the Agreement, '[n]othing in this Agreement shall make the parties affiliates, licensees or parties to a joint venture, community of interest or franchise relationship, and any attempt to characterize the relationship in such terms is expressly agreed to be inapplicable and mutually disclaimed by the parties.'  Therefore, the Agreement contains an express contractual provision bolstering the Court's interpretation that this Agreement does not constitute a franchise contract of any sort.

(*Id*. at 22-23).

After finding that the Agreement was not a franchise or area franchise contract, and that the Minnesota Franchise Act did not apply, Judge Nelson found no local Minnesota interest warranted overriding the parties' contractually exclusive Indiana forum.  She therefore transferred the lawsuit to this court.

## II.    **Dismissal Standard**

MasterBrand brings its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which authorizes the dismissal of claims for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not the merits of the lawsuit.  *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  A court may grant a Rule 12(b)(6) motion to dismiss only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

5

*Twombly*, 550 U.S. 544, 570 (2007).  A complaint sufficient on its face need not give

"detailed factual allegations," but it must provide more than "labels and conclusions, and

a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  The court accepts

all well-pleaded factual allegations in the complaint as true and draws all reasonable

inferences in favor of the plaintiff.  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633

(7th Cir. 2007).

## III.    Discussion

Before addressing the merits of Rogovsky's claims, the court must first

determine whether the law of the case doctrine applies.

### A.      The Law of the Case Doctrine

MasterBrand urges the court to invoke the "law of the case doctrine" and adopt the

legal findings Judge Nelson made in her Order, including, but not limited to, her finding

that "the Agreement is not a franchise or area agreement between the parties, but rather

an agreement that identifies MasterBrand as the sole supplier of cabinets for Rogovsky's

[KHI]-branded franchises."  (Order at 22-23).

Under the law of the case doctrine, "when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same

case."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988).  While

the law of the case doctrine is discretionary and does not limit the district court's power

to reopen what already has been decided, *see Menzer v. United States,* 200 F.3d 1000,

1004-05 (7th Cir. 2000), "courts should be loathe to do so in the absence of extraordinary

circumstances such as where the initial decision was clearly erroneous and would work a

manifest injustice." *Christianson*, 486 U.S. at 817; *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (stating that if the judge changes in a case, "the second judge should 'abide by the rulings of the first judge unless some new development, such as a new appellate decision, convinces him that his predecessor's ruling was incorrect'") (quoting *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir. 1997)); *Best v. Shell Oil Co.*, 107 F.3d 544, 547 (7th Cir. 1997) (stating the law of the case doctrine does not preclude revisitation of an issue if the second ruling is not in the same procedural posture as the first).

Rogovksy argues the court should not follow the doctrine because: (1) the procedural posture is different, including different presumptions of the facts and burdens of persuasion; (2) the issue is not being presented in "precisely the same way"; and (3) the issue is receiving its first adversarial presentation. The court is not persuaded by these arguments. While the court is considering a motion to dismiss, not a motion to transfer as Judge Nelson did, Rogovsky fails to explain how the difference in motion practice compels the court to disregard Judge Nelson's decision and Order. In her ruling, Judge Nelson considered whether the Agreement qualified as a "franchise agreement" under Minnesota law, just as she would if she were deciding a motion to dismiss. Moreover, the applicability of the Minnesota Franchise Act was raised in MasterBrand's motion to transfer. Several months after the motion to transfer was fully briefed, Judge Nelson held oral argument, during which Rogovsky had the opportunity to make any arguments it desired about the Minnesota Franchise Act's applicability. The court read

and reviewed Judge Nelson's Order, and finds it highly persuasive and well-reasoned.

Therefore, the court will follow Judge Nelson's Order under the law of the case doctrine.

**B.     Claims Arising Under Various States' Franchise Laws**

**1.     "Area Franchise"**

In Counts III and IV, Rogovsky alleges that through the Agreement, MasterBrand

granted it an "area franchise" under Minnesota and California franchise laws.  Under the

Minnesota Franchise Act, an "area franchise" is:

> any contract or agreement between a franchisor and a subfranchisor whereby
> the subfranchisor is granted the right, for consideration given in whole or in
> part for such right, to sell or negotiate the sale of franchises in the name or in
> behalf of the franchisor . . . .

Minnesota Code Section 80C.01, Subd. 7.  California's definition of "area franchise" is

virtually identical.  *See* Cal. Bus. & Prof. Code § 20004.  As Judge Nelson ruled,

Rogovsky cannot establish that it sold franchises (1) in the name of or (2) in/on behalf of,

MasterBrand.  (Filing No. 47 at 21-22).  Franchises were not sold in the name of

MasterBrand as evidenced by the Agreement, the FDD, and Rogovsky's website, which

all represent that Rogovsky was selling franchises in the name of Kitchen & Home

Interiors.  (*Id.* at 21).  Franchises were not sold in/on behalf of MasterBrand because: (1)

Rogovksy did not mention MasterBrand in the FDD offered to prospective franchisees,

nor describe the franchise as a MasterBrand cabinet franchise, and (2) Kitchen & Home

Interiors franchises offer and sell more products than the cabinetry that MasterBrand

provides.  (*Id.* at 21-22).  The court adopts Judge Nelson's ruling as the law of the case

and **GRANTS** MasterBrand's Motion to Dismiss Counts III and IV of Rogovsky's

Complaint.

### 2.    Franchise Relationship

In Counts III-XI, Rogovsky alleges the Agreement created a franchise relationship

between it and MasterBrand.  MasterBrand submitted an exhibit containing the relevant

provisions of the state franchise statutes at issue in this case.  (Filing No. 55-3, State-by-

State Statutory Provisions, Defendant's Ex. C).  As a general proposition, a franchise

relationship is established under each state's statute if the following elements are met:

(1) the franchisee makes a required payment[3] to the franchisor or affiliate; (2) the

franchisor grants the franchisee the right to use a trademark associated with the business;

and (3) the franchisor has the right to exert significant control over, or promises to

provide significant assistance in, the franchisee's business.  (*See generally id.*[4]).

---

[3] Of the states alleged in the Complaint, only Connecticut and Mississippi do not require the payment of a franchise fee.

[4] The California Franchise Relations Act is representative of the elements that comprise a franchise.

> As used in this chapter, "franchise" means a contract or agreement . . . by which:
> (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
> (b) The operation of the franchisee's business pursuant to that plan is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Bus. & Prof. Code § 20001.

### a.     Franchise Fee

Under the franchise laws of Minnesota, California, Hawaii, Illinois, Indiana, and Washington, the franchisee must pay a franchise fee to the franchisor.  The fee must be paid "for the right to enter into a business under the franchise agreement."  (*See* Defendant's Ex. C).  Rogovsky contends he paid a franchise fee to MasterBrand through: (1) the remodeling and complete stocking with MasterBrand products of Rogovsky's Florida facility, at a cost of over $300,000, in order to comply with MasterBrand's training facility requirements; (2) agreeing to exclusively sell MasterBrand cabinets; and (3) paying for training from MasterBrand.

### 1.     Remodeling Costs

Under the Minnesota Franchise Act, a franchise fee is defined as:

> Any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments of an initial capital investment fee, any fee or charges based upon a percentage of gross or net sales whether or not referred to as royalty fees, any payment for goods or services, or any training fees or training school fees or charges; provided, however, that the following shall not be considered the payment of a franchise fee: . . . (e) the purchase, at their fair market value, of supplies or fixtures or agreement to so purchase supplies or fixtures necessary to enter into the business or to continue the business under the franchise agreement . . .

Minn. Stat. § 80C.01, subd. 9.  In her Order, Judge Nelson found Rogovsky's $300,000 remodeling cost did not satisfy the Minnesota Franchise Act's definition of "franchise fee" for several reasons.  First, she found the remodel cost fit within exception (e) set forth above as a "purchase . . . of supplies or fixtures . . . necessary to enter into the business or to continue the business under the franchise agreement."  Second, she found

the terms of the Agreement did not require Rogovsky to pay $300,000 to remodel its Deerfield Beach, Florida dealership showroom.  Lastly, she found the Agreement provided that Rogovsky "acknowledges and agrees that all of the costs and expenses incurred in performance of this Agreement are for its own account and shall not for any purpose be construed as franchise, entitlement, licensing, or similar fees."  (Agreement, § 4(c)).  The court adopts her determination as the law of the case.  Because the Illinois, Hawaii, and Washington franchise statutes all contain similar provisions, *see* Defendant's Ex. C, the court finds the $300,000 remodel fee does not constitute a franchise fee for the same reasons.  *See* 805 ILCS 705/3(14); Haw. Rev. Stat. § 482E-2; Wash. Rev. Code § 19.100.010(8).  The court now turns to the franchise laws of California and Indiana.

Under California's franchise law, "[t]he franchisee is required to pay, directly or indirectly, a franchise fee."  Cal Bus. & Prof. Code § 20001(c).  "Franchise fee means any fee or charge that a franchisee or subfranchisee is required to pay or agrees to pay for the right to enter into business under a franchise agreement, including, but not limited to, any such payment for such goods or services."  Cal. Bus. & Prof. Code § 20007.  Indiana law is very similar.  *See* Ind. Code § 23-2-2.5-1(a)(3) ("'Franchise means' a contract by which: (3) the person is . . . required to pay a franchise fee."); *see also id.* § 23-2-2.5-1(i) ("'Franchise fee' means any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business . . . or franchises under a contract agreement, including, but not limited to, any such payment for goods or services.").

Rogovsky argues the money he invested in his Florida showroom falls within the broad definition of a franchise fee under both California's and Indiana's franchise

11

statutes.  Rogovsky fails to acknowledge, however, that under both statutes, the fee is

*required* to be paid by the terms of the parties' agreement.  Section 2(k) of the

Agreement, upon which Rogovsky relies, requires him to "maintain its Florida showroom

for training, including having qualified trainers on staff, all Products current and on

display in the showroom, and ample facilities to host training."  There is nothing within

that contractual provision that *requires* Rogovsky to pay $300,000 to remodel its Florida

KHI showroom.

 *Hamade v. Sunoco, Inc.*, 721 N.W.2d 233 (Mich. Ct. App. 2006), is illustrative of

this point.  There, the plaintiff argued that Sunoco compelled him to indirectly pay a

franchise fee when it conditioned approval of the parties' agreement upon plaintiff

making improvements to his gas station.  *Id*. at 244.  The court found that even if the

payments were required, they did not constitute indirect payment of a franchise fee to

Sunoco, the putative franchisor.  *Id*.  In addition to the fact that plaintiff failed to present

evidence that the moneys spent on the improvements were paid directly to Sunoco, the

court found that:

> [T]he improvements to Hamade's station primarily benefited Hamade.
> This is certainly true of the remodeling of the garage bays into a
> convenience store, whose profits benefits only Hamade.  [A]lthough
> Sunoco indirectly benefited from the improvements to the extent that the
> improvements might contribute to an increase in the sale of fuel, any
> increase in the sale of fuel also benefited Hamade.

*Id*. at 245.  Similarly here, while Rogovsky's remodel arguably provided some indirect

benefit to MasterBrand, it primarily benefited Rogovsky, especially since the remodel

was to Rogovsky's pre-existing KHI showroom from which Rogovsky itself – and not its

KHI franchisees – sold cabinets and other remodeling materials and fixtures directly to consumers.  Accordingly, Rogovsky's remodel of his pre-existing showroom does not constitute a direct or indirect fee paid to MasterBrand.

### 2.       Promise to Sell MasterBrand

In Section 2(b) of the Agreement, Rogovsky promised to sell only MasterBrand cabinets.  Rogovsky argues this promise – which necessarily meant he could not sell cabinetry from any other supplier – constitutes a franchise fee.  Judge Nelson held that, under the Minnesota Franchise Act, Rogovsky's contractual promise not to sell products that compete with MasterBrand's products does not constitute a "fee" or "charge," as it is not a "payment either in lump sum or by installments."  (Order at 19 (citing Minn. Stat. § 80C.01, subd. 9)).  Hawaii and Washington use the same language in their definitions. *See* Haw. Rev. Stats. § 482E-2 ("Franchise fee" means any fee or charge that a franchisee . . . is required to pay . . . under a franchise agreement, including, but not limited to, the payment either in lump sum or by installments . . . ."); Wash Rev. Code § 19.100.010 (same).  Accordingly, the promise to sell only MasterBrand to the exclusion of other competitors does not constitute a franchise fee under the franchise laws of Minnesota, Hawaii, or Washington.

Similarly, under California, Illinois, and Indiana franchise laws, a franchise fee is a fee or charge that one must pay.  *See* Cal. Bus. & Prof. Code § 20007 (defining "franchise fee" as a "fee or charge"); 805 ILS 705/3(14) (same); Ind. Code § 23-2-2.5-1(i) (defining "franchise fee" as a "fee").  It does not include non-monetary consideration such as discontinued competitor sales. *See Upper Midwest Sales Co. v. Ecolab, Inc.*, 577

N.W.2d 236, 243 (Minn. Ct. App. 1998) (holding non-monetary consideration does not meet the statutory definition of franchise fee under the Minnesota Franchise Act); *Noyes v. State Farm Gen. Ins. Co.*, No. C08-5032, 2009 WL 927706, at *6 (W.D. Wash. April 1, 2009) (holding that a "franchise fee" necessarily means that "some amount of money has changed hands between franchisee and franchisor").  Although neither *Upper Midwest Sales* nor *Noyes* is binding authority, the court finds the decisions are persuasive authority for the proposition that non-monetary consideration, such as Rogovsky's promise to sell MasterBrand cabinets exclusively in its KHI franchises, does not constitute a franchise fee.

### 3.    Training Fees

Finally, Rogovsky argues he was required to pay for training pursuant to Section 3(d) of the Agreement, and that this fee constituted a franchise fee.  The court rejects this argument for two reasons.  First, Rogovsky's Complaint did not allege that it paid any "training fees," nor did it allege that the training fees were required to be paid to MasterBrand as a franchise fee.

Second, even if the Complaint alleged that these "training fees" were franchise fees, the argument would still fail because Section 3(d) of the Agreement does not require Rogovsky to pay anything.  That section reads: "[MasterBrand] shall provide [Rogovsky] with marketing and sales support, information and training, although [MasterBrand] reserves the right to invoice [Rogovsky] for the related costs and fees."  Rogovsky did not allege that MasterBrand invoiced it for any "fees or costs" incurred during training, or that it actually paid MasterBrand for any such "fees or costs."  The court therefore finds

14

that the "training fees" referenced in Section (d) of the Agreement do not constitute a franchise fee.

### 4.     Conclusion

The allegations of Rogovsky's Complaint and the terms of the parties' Agreement fail to establish that Rogovsky paid a franchise fee to MasterBrand.  Therefore, Rogovsky failed to establish a plausible claim for relief under the franchise laws of Minnesota, California, Hawaii, Illinois, Indiana, and Washington.  MasterBrand's Motion to Dismiss Counts III (Minnesota), IV (California), VI (Hawaii), VII (Illinois), VIII (Indiana), and XI (Washington) is therefore **GRANTED**.

### b.     Franchisor's Trademark

In addition to a franchise fee, the franchise laws of every state except Mississippi require the operation of the franchisee's business to be substantially associated with the franchisor's trademark.  *See, e.g.,* Conn Gen Stat. Ann. § 42-133e ("the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark").   Because the franchise laws of Connecticut and Mississippi are the only claims remaining (and because Mississippi does not have a trademark requirement), the court will focus its analysis on the Connecticut Franchise Act.

In determining whether the franchisee's business is substantially associated with the franchisor's trademark, "[s]ome federal courts have looked at the likely result of a disassociation of the parties in order to determine how dependent, or associated, the franchisee is on its franchisor and its commercial symbols."  *Hartford Elec. Supply Co. v. Allen-Bradley Co., Inc.*, 736 A.2d 824, 839 (Conn. 1999).  "'Where the franchisee is

15

completely dependent on the public's confidence in the franchised product for most or all of [its] business, abrupt severance of the franchise tie, without good cause and without sufficient notice, could spell ruination.'" *Id.* (quoting *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 677 (2d Cir. 1985)).

Rogovsky maintains the substantial association test is met through: (1) Section 3(b) of the Agreement; (2) Rogovsky's use of the MasterBrand mark in the sale of Rogovsky's KHI franchises; and (3) MasterBrand's termination of the Agreement, which, Rogovsky alleges, destroyed its business.

Section 3(b) of the Agreement granted Rogovsky the non-exclusive right to use MasterBrand's trademarks "to advertise and promote the sale of [MasterBrand's cabinets] during the term of the Agreement . . . ." Section 3(b) unambiguously granted Rogovsky the right to use MasterBrand's trademarks in order to advertise and promote *the sale of MasterBrand cabinets*; Section 3(b) did not grant Rogovsky the right to use the MasterBrand trademarks to promote the sale of *KHI franchises*. Furthermore, Item 13 of Rogovsky's FDD explicitly stated, "The principal trademark (service mark) we license to you for use in your franchise is the Kitchen & Home Interiors logo." Significantly, the FDD says nothing about the MasterBrand trademark. Lastly, the mere fact that Rogovsky's KHI franchises were hurt as a result of MasterBrand's termination of the Agreement does not mean that KHI had a substantial association with MasterBrand's trademarks. *See Echo, Inc. v. Timberland Mach. & Irrigation, Inc.*, 661 F.3d 959, 966 (7th Cir. 2011) ("No court, however, has relied solely on the fact that a company went out of business to conclude that a franchise relationship existed.") (applying Connecticut

law).  Were that the law, nearly every business deal gone awry could potentially fall within the franchise law of Connecticut.  Therefore, Rogovsky cannot establish a plausible claim for relief under the Connecticut Franchise Act.  MasterBrand's motion to dismiss Count V is **GRANTED**.

### c.       Waiver

Only Rogovsky's claim under the Mississippi Code remains.  The Mississippi Code, unlike the other state franchise laws under which Rogovsky sued, does not have an anti-waiver provision.  Moreover, Section 5(b) of the Agreement waives the parties' rights to characterize their relationship as a franchise relationship.  It reads: "Nothing in this Agreement shall make the parties affiliates, licensees or parties to a joint venture, community of interest or franchise relationship, and any attempt to characterize the relationship in such terms is expressly agreed to be inapplicable and mutually disclaimed by the parties."  Accordingly, under the plain language of the Agreement, Rogovsky's claim for violation of the Mississippi Code is waived.  MasterBrand's motion to Dismiss Count X is **GRANTED**.

### d.       Conclusion

In sum, the Agreement signed by the parties is not a franchise or an area franchise agreement.  Instead, as its name suggests, the Agreement is a *distribution agreement*, as it identifies MasterBrand as the sole supplier of cabinets for Rogovsky's KHI franchises.  Accordingly, Counts III-XI of Rogovsky's Complaint must be dismissed.

### C.       Indiana Common Law Claims

As noted previously, the Agreement is governed by Indiana law.  MasterBrand moves to dismiss Count II, tortious interference with contractual relations and prospective business advantage; Count XII, unjust enrichment; and Count XIII, equitable estoppel.

### 1.     Tortious Interference

In his Response, Rogovsky withdrew his claim for tortious interference with prospective business advantage.  (*See* Filing No. 65 at 32 n. 29).  The court therefore turns to its claim for tortious interference with contractual relations.  Indiana courts recognize a cause of action for tortious interference with contract when a defendant "induces a party to a contract to break it, intending to injure another person or to get benefit for himself ... [without] sufficient justification for the interference." *Bragg v. City of Muncie,* 930 N.E.2d 1144, 1147 (Ind. Ct. App. 2010).  To prove the tort, the plaintiff must establish five elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach.  *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 118 (Ind. Ct. App. 2008) (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)).  The element of absence of justification is established only if the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005) (citations omitted).

18

Rogovsky alleges that MasterBrand's breach of the Agreement precluded Plaintiff "from continuing its relationships with its current franchisees." (Compl. ¶ 81). Rogovsky fails to allege, however, that MasterBrand intentionally induced the breaking of Rogovsky's franchise agreements with its franchisees. In short, Rogovsky failed to allege tortious conduct – i.e., that which is intentional and unjustified – on the part of MasterBrand. Accordingly, MasterBrand's motion to dismiss Count II is **GRANTED**.

### 2.   Quantum Meruit

MasterBrand argues Rogovsky's claim of quantum meruit must be dismissed because the parties' relationship is governed by the parties' written Agreement. To prevail on a claim of quantum meruit – a contract implied-in-law – "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408-09 (Ind. 1991). When there is an express contract, recovery cannot be based on a theory implied in law, such as unjust enrichment, for two reasons: "(1) a contract provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011).

Here, Rogovsky acknowledges that a valid contract exists. Rogovsky argues, however, that its claim for unjust enrichment should not be dismissed because it was pled in the alternative. To plead unjust enrichment in the alternative, a plaintiff must allege: (1) that a contract was breached and (2) that "there was either no contract on point or that the contract at issue was unenforceable." *CoMentis, Inc. v. Purdue Research Found.*, 765

F. Supp. 2d 1092, 1103 (N.D. Ind. 2011) (emphasis in original).  Rogovsky did not allege that there was no contract on point or that the contract at issue (the Agreement) was unenforceable.  As such, under Indiana law, "where an express contract governs the parties' behavior, a claim for unjust enrichment is not cognizable."  *Id*. at 1102. MasterBrand's motion to dismiss Count XII is therefore **GRANTED**.

### 3.  Equitable Estoppel

MasterBrand argues that Rogovsky's equitable estoppel claim must be dismissed because it is available only as a defense.  Rogovsky agrees, but submits the claim is mislabeled and should be considered as a claim for promissory estoppel.  Under Indiana law, "a claim of promissory estoppel will permit recovery only where no contract in fact exists."  *Id*. at 1098.  "[I]f the promises . . . are founded on a valid written contract between the parties, then the promissory estoppel claim becomes unwarranted surplusage."  *Id*.  Because the parties agree that the Agreement is valid and contains the promises which form the basis of Rogovsky's breach of contract claim, Rogovsky's equitable estoppel claim must be dismissed.  MasterBrand's motion to dismiss Count XIII is therefore **GRANTED**.

### 4.  Consequential Lost Profit Damages

Finally, MasterBrand argues Rogovsky is precluded from seeking damages in the form of consequential lost profits pursuant to Section 2(j) and Section 4(c) of the Agreement.  Rogovsky asserts four arguments as to why the exculpatory clauses do not negate his claims for damages: (1) the exculpatory clauses do not apply to the facts of this case; (2) the exculpatory clauses are unenforceable under Indiana law; (3) the anti-waiver

provisions of the state franchise statute made the exculpatory clauses unenforceable; and

(4) the damage Rogovsky has suffered is not limited to consequential lost profits.

Under Indiana law, the primary objective in construing a contract is to give effect to the

intent of the parties as expressed on the four corners of the document. *Cherokee Air*

*Products, Inc. v. Buchan*, 14 N.E.3d 831, 834 (Ind. Ct. App. 2014) (citing *Kaghann's*

*Korner, Inc. v. Brown & Sons Fuel Co.*, 706 N.E.2d 556, 565 (Ind. Ct. App. 1999)).

Unambiguous terms are conclusive of the parties' intent; the court merely applies the

language of the contract to the facts of the case. *Id*.   The contract must be read as a

whole and the language construed so as not to render any words, phrases, or terms

ineffective or meaningless. *Id*.

      If the district court determines the meaning of a contract is unambiguous, it may

determine its meaning as a matter of law. *Simon Prop. Grp., L.P. v. Michigan Sporting*

*Goods Distrib., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005).   "'A contract term is

not ambiguous merely because the parties disagree about the term's meaning.'" *Id*.

(quoting *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173

(Ind. Ct. App. 2002)).   Rather, language is ambiguous only if reasonable people would

find the contract susceptible to more than one construction. *Id*.   The construction of an

ambiguous contract must be resolved by the trier of fact, rendering summary judgment

inappropriate. *Walker v. Trailer Transit, Inc.*, 1 F. Supp. 3d 879, 882 (S.D. Ind. 2014)

(applying Indiana law).

      Section 2 of the Agreement is entitled Distributor's Representations, Warranties

and Agreements.  At issue is Section 2(j), which reads:

> [ROGOVSKY] ACKNOWLEDGES THAT [MASTERBRAND] MADE NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARE HEREBY DISCLAIMED. **IN NO EVENT SHALL [MASTERBRAND] BE LIABLE TO [ROGOVSKY] FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES.**

(Agreement, § 2(j)) (emphasis added).  According to Rogovsky, Section 2(j) does not apply because it is a clear disclaimer of warranties and would only come into play if Rogovsky were alleging fraud.

A reasonable person could interpret Section 2(j) as precluding Rogovsky from asserting a breach of warranty claim against MasterBrand, and as precluding, under any circumstances, Rogovsky from seeking consequential damages for such warranty claim. On the other hand, a reasonable person could interpret the "in no event" phrase as so broad as to preclude consequential damages for any claim whatsoever.  The language of Section 2(j) is, therefore, ambiguous.

Section 4 of the Agreement is entitled Term and Termination.  Section 4(c) states:

> The rights of termination granted herein are absolute, and each party acknowledges it has considered, bargained for and assumed as its own exclusive risk the possibility of making expenditures of money and time in preparing for the performance of this Agreement and possible loss or damage on account of the loss of prospective profits or anticipated sales or . . . otherwise resulting from the proper termination or expiration hereof. . . . **Neither party shall be liable to the other for any claim, cost or damages by reason of such expenditures or anticipated profits or sales.**

(Agreement, § 4(c)) (emphasis added).  Rogovsky maintains this Section does not apply because all of the limitations in Section 4(c) are conditioned upon a "proper termination or expiration" of the Agreement.  Rogovsky's interpretation is reasonable.  The Section's last sentence, set forth in bold above, refers to the parties' mutual promise not to seek

22

damages for the expenditures made in the performance of the Agreement or for anticipated profits or sales in the event that one of the party's terminated the agreement for "good cause." Again, however, the "any claim" language is extremely broad; thus, a reasonable person could interpret that as a broad waiver of consequential damages for any claim. Having found Section 4(c) ambiguous, the court need not address the balance of Rogovsky's arguments. MasterBrand's motion to dismiss Rogovsky's damages claim for consequential damages is therefore **DENIED**.

## IV.    Conclusion

Rogovsky failed to state plausible claims for relief under the state franchise laws alleged in its Complaint, and under Indiana common law for tortious interference with contract, quantum meruit, and equitable estoppel. Accordingly, MasterBrand's Motion to Dismiss Plaintiff's Complaint (Filing No. 52) is **GRANTED** with respect to Counts II-XIII. MasterBrand's Motion to Dismiss Rogovsky's claim for consequential damages is **DENIED**.   Count I for breach of contract remains.

**SO ORDERED** this 30th day of November 2015.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

23